**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

THERESA A. B.,                        )
                                      )
    Plaintiff,                    )
                                      )
v.                                    )         Case No. 25-cv-00056-SH
                                      )
FRANK BISIGNANO,[1]                   )
Commissioner of Social Security,      )
                                      )
    Defendant.                    )

**OPINION AND ORDER**

Pursuant to 42 U.S.C § 405(g), Plaintiff Theresa A. B. seeks judicial review of the

Commissioner of Social Security ("Commissioner") denying her claim for benefits under

Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434.  In accordance with

28 U.S.C. § 636(c), the parties have consented to proceed before a United States

Magistrate Judge.  For the reasons explained below, the Court affirms the Commissioner's

decision denying benefits.

### I.      Disability Determination and Standard of Review

Under the Act, a "disability" is defined as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for

a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   The

impairment(s) must be "of such severity that [the claimant] is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage

---

[1] Effective May 7, 2025, pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kinds of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment(s) meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if the court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.      **Background and Procedural History**

Plaintiff applied for disability insurance benefits under Title II of the Act, with a protective filing date of January 16, 2022. (R. 223, 226.) Plaintiff alleged that she had been unable to work since December 1, 2021, due to conditions that included back surgeries, neck surgery, tachycardia, vertigo, constructive obstructive pulmonary disease, asthma, Hashimoto's disease, arthritis/bursitis, migraines, and cataracts. (R. 226, 299.) Plaintiff was 61 years old at the time of the ALJ's decision. (R. 26, 226.) Plaintiff has an associate's degree in nursing, and past relevant work as a nurse, staff, occupational health nurse, and as a general duty nurse. (R. 41, 65, 300—01, 315.)

Plaintiff's claim was denied initially and on reconsideration. (R. 77, 89.) Plaintiff then requested and received a hearing before an ALJ. (R. 33–69, 109–10.) The ALJ denied benefits and found Plaintiff not disabled. (R. 17—26.) The Appeals Council denied review on December 3, 2024 (R. 1–6), making the ALJ's decision final. 20 C.F.R. 404.981. Plaintiff now appeals.

## III.     **The ALJ's Decision**

In his decision, the ALJ found that Plaintiff met the insured requirements for Title II purposes through December 31, 2026. (R. 19.) The ALJ then found at step one that

Plaintiff had not engaged in substantial gainful activity since December 1, 2021. (*Id.*) At step two, the ALJ found Plaintiff had the severe impairments of "spine disorder, dysfunction of major joints, disorders of muscles, ligament and fascia, and asthma." (R. 19–20.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 20.) The ALJ then determined Plaintiff had the RFC for light work, with numerous additional physical and environmental limitations. (R. 20–21.) The ALJ provided a recitation of the evidence that went into this finding. (R. 21–25.) At step four, the ALJ found Plaintiff was able to perform her past relevant work as a nurse, staff, occupational health nurse. (R. 25–26.) Accordingly, the ALJ concluded Plaintiff was not disabled. *Id.*

## IV.    Issues

On appeal, Plaintiff raises two errors relating to the RFC finding. First, Plaintiff argues the ALJ's narrative discussion of the RFC failed adequately to address certain evidence. (Dkt. No. 12 at 8–10.) Second, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's subjective statements. (*Id.* at 11–14.)

## V.    Analysis

### A.    The RFC Finding

Before proceeding to step four,[2] the ALJ must first determine a claimant's RFC. That is, a claimant may have impairments and related symptoms, and those symptoms

---

[2] The ALJ makes the step-four finding in three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). In phase one, the ALJ evaluates the claimant's physical and mental RFC. *Id.* In phase two, the ALJ examines the demands of the claimant's past relevant work. *Id.* And in the final phase, "the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id.* Plaintiff's sole challenge is to the ALJ's assessment of her physical RFC in phase one.

may cause physical or mental limitations that affect what the claimant can do in a work setting. 20 C.F.R. § 404.1545(a)(1). The claimant's RFC is what's left—"the most [the claimant] can still do despite [her] limitations." *Id.* The Commissioner makes this decision based on "all the relevant medical and other evidence" in the case record. *Id.* Categories of evidence include (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) certain prior administrative medical findings. 20 C.F.R. § 404.1513(a).

As Social Security Ruling 96-8p clarifies, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." 1996 WL 374184, at *3 (July 2, 1996). The analysis must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence," and "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." *Id.* at *7. The ALJ should not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). But the ALJ is under no obligation to discuss "every piece of evidence." *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (stating the claimant "points to evidence that she claims the ALJ failed to discuss, but the most part she does not say why it was significantly probative . . . ."). Rather, the ALJ must discuss the evidence supporting his decision, uncontroverted evidence he chooses not to rely upon, and significantly probative evidence he rejects. *Clifton*, 79 F.3d at 1010.

### B.    The ALJ's Narrative Discussion

Here, Plaintiff argues the ALJ failed to provide an adequate narrative explanation and did not provide "a sufficient discussion of the relevant evidence upon which [his decision] should have been based . . . ." (Dkt. No. 12 at 9.).  Plaintiff acknowledges the ALJ considered evidence of Plaintiff's neuroforaminal narrowing, ligament rupture and sprain with arthrosis and cartilage loss, tendinosis, AC joint arthrosis, bursitis, and other conditions.  (*Id.*)  But, Plaintiff asserts, "the ALJ provided no substantive explanation of how such evidence led him to conclude that [Plaintiff] was capable of performing" the standing or walking required by light work.  (*Id.* at 9—10.)

Contrary to Plaintiff's assertion, the ALJ not only acknowledged these conditions, but provided a detailed explanation of how he considered them in calculating the RFC. (R. 21—25.)   Following references to nonmedical sources, the ALJ began a largely chronological narrative of the medical evidence including the dates the above-listed conditions were documented.  (*Id.*)  The ALJ cited medical documents noting that, on October 11, 2021, Plaintiff had "normal musculoskeletal alignment, symmetry, and range of motion" (R. 22);[3] on November 17, 2021, Plaintiff moved all four extremities without difficulty (*id.*); Plaintiff had normal posture and could "heel and toe walk" on October 18, 2022 (R. 23); Plaintiff walked normally and had 5/5 motor strength and a normal range of motion on January 23, 2023 (*id.*); Plaintiff had improved motion in her right shoulder on March 28, 2023, following surgery (R. 24); on July 5, 2023, Plaintiff told providers her bursitis produced "just [a] mild amount of pain" (*id.*); and, during an August 1, 2023 musculoskeletal exam, Plaintiff had normal range of motion (*id.*).  Finally, on January 31,

---

[3] Though the ALJ did not always cite the page on which the actual finding was documented, each cited finding was made during the same medical visit cited by the ALJ.

2024, "her lungs were clear to auscultation without rales, rhonchi or wheezes." (R. 24–25.)  The ALJ then discussed the prior administrative medical findings.  He found Plaintiff's RFC was more limited than one prior finding that she could do a full range of medium work, noting she had continued back, neck, shoulder, and knee pain, and had osteoarthritis.  (R. 25.)  But the ALJ found Plaintiff's RFC was less limited than a prior administrative medical finding of light work while never climbing ladders, ropes, or scaffolds, occasionally stooping, and avoiding exposure to fumes, odors, dusts, gases, and poor ventilation.  (*Id.*)  This time, the ALJ noted certain prior examinations and Plaintiff's activities of daily living.  (*Id.*)

Plaintiff also complains the ALJ failed to discuss certain specific pieces of evidence relating to her lumbar area, left knee, left hip, and cervical stenosis and neuroforaminal narrowing.  (Dkt. No. 12 at 10.)  But, the ALJ discussed much of this or similar evidence.  (*See, e.g.,* R. 22 & 25 (noting lumbar spondylosis and neuroforaminal narrowing); R. 23 (noting left knee ligament rupture, arthrosis, and other findings); R. 24 & 25 (noting hip pain on rotation or palpation, hip osteoarthritis, and other findings).)  The ALJ did not specifically discuss the MRI showing changes to the cervical spine.  (R. 728–29.)  But the ALJ stated he considered the entire record (R. 19), which included this MRI, and the ALJ discussed numerous other pages of the same exhibit 13F (R. 22–23, 25).  *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("our general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter.").  Plaintiff points to no limitations from the MRI that would have altered the ALJ's consideration of the RFC.

The Court finds the ALJ's RFC analysis meets the narrative discussion requirements, and his conclusions are supported by substantial evidence.  Plaintiff points to no uncontroverted evidence or significantly probative evidence the ALJ failed to

mention.  The Court can easily follow the ALJ's reasoning in reaching the conclusion that, as of the date of the ALJ's decision, Plaintiff was capable of performing light work with the additional limitations noted in the RFC.  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where . . . we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.").  Instead, Plaintiff simply disagrees with the ALJ's interpretation of the evidence.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).  Even if the evidence could support a different finding, the Court cannot "displace the agency's choice between two fairly conflicting views . . . ."  *Id.* (quoting *Lax*, 489 F.3d at 1084).  Plaintiff has failed to show any error in the ALJ's RFC analysis.

### C.    Plaintiff's Subjective Statements

Plaintiff next complains that the ALJ improperly rejected her subjective symptom complaints.  (Dkt. No. 12 at 12–14.)

The regulations define "symptoms" as a claimant's "own description" of their "physical or mental impairment."  20 C.F.R. § 404.1502(i).  In evaluating symptoms, an ALJ uses a two-step process.  Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529.  First, medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities that could reasonably be expected to produce the symptoms alleged.  20 C.F.R. § 404.1529(b).  Second, once such impairment(s) are established, the ALJ must evaluate the intensity and persistence of the

symptoms so the ALJ can determine how they limit the claimant's capacity to work. *Id.* § 404.1529(c)(1).

Factors the ALJ should consider in their evaluation include: (i) daily activities; (ii) location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) measures the claimant has used to relieve the symptoms; and (vii) other factors concerning functional limitations and restrictions due to the symptoms. *Id.* § 404.1529(c)(3)(i)-(vii). The ALJ's findings regarding symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (*quoting Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). However, a "formalistic factor-by-factor recitation of the evidence" is not required where the ALJ states "the specific evidence he relies on" in the evaluation. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *10. Subjective symptom findings are "peculiarly the province of the finder of fact," so reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391).

Here, Plaintiff accuses the ALJ of offering a "bare conclusion," failing to address Plaintiff's hearing testimony, or failing to "provide actual reasons for discounting her statements about her symptoms tied to the relevant factors . . . ." (Dkt. No. 12 at 12.) Specifically, Plaintiff argues the ALJ failed to address Plaintiff's testimony regarding

"widespread pain, thyroid nodules, multiple hand problems, asthma with various triggers, kidney disease, and various other impairments . . . ." (*Id.* at 13.)

The ALJ began his analysis by recounting Plaintiff's testimony, including Plaintiff's description of her daily activities. (R. 21.) Plaintiff testified that, despite her impairments, Plaintiff could feed her pets; could "mostly" handle her personal care; did not need reminders to take medication; and could prepare meals, handle light housework, drive, shop in stores, pay bills, and handle a savings account. (*Id.*) The ALJ acknowledged Plaintiff's testimony that she had trouble sleeping and her "illnesses affected her abilities when lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing." (*Id.*) The ALJ then described the third-party function report, which confirmed much of the same, but also stated Plaintiff could drive. (*Id.*) The ALJ did not, in these two paragraphs, specifically describe Plaintiff's complaints regarding her pain, thyroid nodules, hand issues, asthma, or kidney disease. After presenting these bodies of subjective evidence, the ALJ stated:

> I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 21–22.) The ALJ then noted several pieces of objective medical evidence in the record, as discussed previously, and the recitation of this objective medical evidence covered each of Plaintiff's subjective complaints apart from Plaintiff's hand issues.[4] (*See, e.g.* R. 22 (describing Plaintiff's complaints of shortness of breath, Plaintiff's complaint of 8/10 pain

---

[4] Plaintiff does not explain what additional limitations should have resulted from her testimony regarding her hands.

in her abdomen and back, and Plaintiff's diagnosis of acute kidney injury).). *See also* SSR 16-3p, at \*5 ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . . .").

The Court finds no error in the ALJ's analysis. The ALJ provided numerous reasons for finding Plaintiff's symptoms were not as severe or limiting as alleged, and a review of the record confirms these reasons are supported by substantial evidence. The ALJ's analysis reflects he considered the factors outlined in 20 C.F.R. § 404.1529(c) and SSR 16-3p, including Plaintiff's daily activities (R. 21[5]), the location and intensity of Plaintiff's symptoms (R. 22—25[6]), precipitating and aggravating factors (*id.*[7]), the type and effectiveness of medications (R. 22—24[8]), her treatment aside from medication (R. 23-24[9]), measures she took to relieve the symptoms (R. 22.[10]), and other evidence reflecting Plaintiff's functional limitations and restrictions due to her symptoms. (R. 21—

---

[5] Noting Plaintiff on "most days" would "watch television, bake, reach, play some games and listen to music." (R. 21.)

[6] Noting, e.g., Plaintiff's reporting to providers shortness of breath "mild to moderate in severity", and back pain that was "8/10" intensity. (R. 22.) The ALJ also noted that Plaintiff experienced only a "mild amount of pain" in her hip. (R. 24.)

[7] Noting, e.g., that pressure sensation in chest "was worse with exertion" (R. 22), Plaintiff had "tenderness to palpation in the lower abdomen" (*id.*), her shoulders "showed tenderness to palpation" (R. 23), and "moving heavy stones . . . caused the shoulder to become increasingly uncomfortable." (R. 24).

[8] Noting that Plaintiff "was managed on medications" (R. 22), "her migraines had responded very favorably to the use of Qulipta" (R. 23), and Plaintiff received an injection for pain from trochanteric bursitis. (R. 24.)

[9] Noting, e.g., previous spinal fusion with "no evidence of hardware failure" (R. 22), Plaintiff's undergoing a right shoulder arthroscopy (R. 23), and "well-healed surgical incisions with no signs of infection" and "full motion" and "near full strength" roughly three months after shoulder surgery. (R. 24).

[10] Noting that resting helped with pressure sensation in chest. (R. 22.)

25.[11]) Thus, the ALJ did all that was required in considering Plaintiff's subjective statements. The ALJ's failure to expressly mention every form of treatment given to Plaintiff (*see* Dkt. No. 12 at 14) does not detract from the fact that the ALJ clearly considered both Plaintiff's subjective statements regarding her symptoms and all relevant evidence documenting how those symptoms could impair Plaintiff's ability to work. *See Clifton*, 79 F.3d at 1009–10. Plaintiff has not explained how the evidence not cited by the ALJ provides any symptoms, medical findings, or impairments that are not already addressed elsewhere in the ALJ's decision.

## VI.    Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is AFFIRMED.

**SO ORDERED** this 16th day of March, 2026.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[11] Noting, e.g., Plaintiff's testimony her symptoms affected her abilities when "lifting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing . . ." (R. 21), Plaintiff's respiratory exam was normal and she "moved all four extremities without difficulty" (R. 22), Plaintiff "had normal posture," could "heel and toe walk," and her "sensation to light touch was intact" (R. 23), and Plaintiff's statement to a doctor that "she did have quite a bit of landscaping work which included large amount of shuffling as well as moving heavy stones about" (R. 24).